IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ALASKA STOCK, LLC,

                                    Plaintiff,

         v.

PEARSON EDUCATION, INC., and JOHN
DOE PRINTERS 1-10

                                    Defendants.

Case No. 3:11-cv-00162-TMB

**ORDER**

## I.      INTRODUCTION

This is an action by Plaintiff Alaska Stock, LLC ("Alaska Stock") against Pearson

Education, Inc. ("Pearson") and several pseudonymously named parties for copyright

infringement and fraud.[1]  Pearson has moved for summary judgment and Alaska Stock has

cross-moved for partial summary judgment.[2]  Each motion is opposed and has been fully briefed.

For the reasons discussed below, Pearson's motion at Docket 92 is GRANTED, in part, and

DENIED, in part, and Alaska Stock's motion at Docket 99 is DENIED.

## II.      FACTUAL BACKGROUND

Many of the facts underlying this case are undisputed.  Alaska Stock is a stock

photography company that licenses the photographs taken by approximately 200 photographers

---

[1]  Dkt. 1.

[2]  Dkt. 92; Dkt. 99.

to a number of publishers, including Pearson.[3]  Between 1999 and 2007, Pearson paid Alaska

Stock for limited licenses to use copies of specific photographs in its education publications.[4]

The licenses expressly limited the number of copies Pearson was permitted to use, the allowable

distribution area, and included several other limitations.[5]

Each time Pearson sought to obtain a license, Pearson sent Alaska Stock a "billing

request."[6]  Each of Pearson's requests contained similar language and information.  For example,

on or about June 20, 2002, Pearson sent Alaska Stock a request to use image 33,[7] a photo of a

man with a frosted beard and face.[8]  Pearson informed Alaska Stock that it would use a 1/4-page

reproduction of the image in a particular textbook, that the image would be used only in the first

edition of the book, that circulation of the book would be "under 40,000 copies," that the book

would be printed in Spanish, and that the book's distribution would be limited to the "United

States, its territories and possessions, United States Department of Defense Schools, and Canada

[]."[9]

Alaska Stock responded to Pearson's billing requests by sending invoices.  Each invoice

expressly detailed the scope of the license and the price Pearson was required to pay for its use of

---

[3]  Dkt. 99-3 at 3; Dkt. 129-3 at 21.

[4]  Dkt. 99-3 at 3.

[5]  *Id*. at 3-4.

[6]  *See* Dkt. 99-6; *see also* Dkt. 94 at 2.

[7]  The image numbers cited by the Court throughout this order correspond to the numbers listed in Exhibit 1 to the Complaint.  *See* Dkt. 1-1.

[8]  *See* Dkt. 99-6 at 2-4; Dkt. 100-1 at 3.

[9]  Dkt. 99-6 at 2-4.

the image.[10]  For example, in response to Pearson's June 20, 2002 request to use image 33, Alaska Stock sent Pearson an invoice dated July 1, 2002.[11]  The invoice provided that, for a specific price, Pearson would have "[o]ne time, non-exclusive North American Spanish language reproduction rights" for "one edition" of the specified textbook, "with a press run limited to 40,000 or less."[12]  The invoice also stated that "[n]o electronic use rights [were] allowed under th[e] license" and that "teacher editions, ancillaries and/or related materials [we]re available for additional fees."[13]  In bold print at the bottom of the invoice, Alaska Stock stated that any use beyond the terms stated in the invoice "must be negotiated and paid for before use."[14]

Effective July 19, 2006, Alaska Stock and Pearson entered into a "preferred vender agreement" ("PVA"), which established pricing terms for Pearson's use of Alaska Stock's photographs.[15]  The PVA set a base rate for up to a full-page photograph, with distribution of up to 100,000 copies in North America, but allowing up to ten percent distribution abroad and up to five percent distribution by e-book.[16]  If distribution was to exceed 100,000, a percentage was to

---

[10]  *See* Dkt. 99-7.

[11]  Dkt. 99-8 at 5.

[12]  *Id.*

[13]  *Id.*

[14]  *Id.*

[15]  Dkt. 99-10.

[16]  *Id.* at 6.

be added to the "base rate."[17]  If distribution was to exceed 500,000, a higher percentage was to be added to the base rate.[18]

After the PVA was executed, Pearson continued to send billing requests and Alaska Stock continued to send licenses.  For example, on or about August 17, 2007, Alaska Stock sent Pearson an invoice, licensing Pearson to use image 147, a photograph of a caribou overlooking a lake.[19]  The license granted Pearson "[o]ne time, non-exclusive North American English and Spanish language reproduction rights" as "a two[-]page spread used once" in "one edition of the print and electronic versions" of the specified textbook, with a press run of "up to 100,000."[20]  The invoice also stated that payment for use of the image must be made "before use of the image[] t[ook] place."[21]

In May 2008, Alaska Stock received a billing request from Pearson in which it sought to reuse a photograph it previously used in a 2006 publication.[22]  Alaska Stock found the request "odd" for two reasons:  (1) Pearson had last been licensed to use the photograph in a 2001 publication, not a 2006 publication; and (2) Pearson had requested permission to reproduce only 5,000 copies of the photograph, a quantity which Alaska Stock perceived to be very low for an

---

[17] *Id.*

[18] *Id.*

[19] Dkt. 99-9 at 11.

[20] *Id.*

[21] *Id.*

[22] Dkt. 118 at 7; *see also* Dkt. 118-6 at 20.

education publication.[23]  Alaska Stock contacted Pearson on May 13, 2008.[24]  After exchanging

numerous emails, Pearson disclosed on July 8, 2008, that it had printed over 350,000 copies of

the publication in which the photograph was used.[25]  Pearson's 2001 license authorized it to print

only 40,000 copies.[26]  Pearson described the incident to Alaska Stock as "a project that fell

through the cracks" and requested a price and retroactive license for the print overages.[27]

Following Pearson's disclosure, Alaska Stock began to wonder whether Pearson had

reproduced photographs beyond the limits of its other licenses.[28]  On July 22, 2008, Alaska Stock

asked Pearson for print quantity information on 25-30 other licenses.[29]  On September 22, 2008,

after Alaska Stock made several follow-up inquiries, Pearson disclosed two more instances in

which it had exceeded the authorized print quantity.[30]  On three occasions between late 2008 and

early 2009, Pearson provided limited additional information, but did not disclose any additional

instances of overprinting.[31]

---

[23]  Dkt. 118 at 7.

[24]  *Id*.

[25]  *Id*.; Dkt. 118-6 at 18.

[26]  Dkt. 118 at 7.

[27]  Dkt. 118-6 at 16, 18.

[28]  Dkt. 118 at 8.

[29]  Dkt. 118 at 8; Dkt. 118-6 at 16.

[30]  Dkt. 118 at 8; Dkt. 118-6 at 12.  Between July 22, 2008, and September 22, 2008, Alaska Stock and Pearson exchanged numerous contacts regarding the status of Alaska Stock's request. *See* Dkt. 118-6 at 12-16.

[31]  Dkt. 118 at 9; Dkt. 118-6 at 8-11.

Between December 2008 and July 2011, many of the photographers whose images were licensed to Pearson executed agreements in which they assigned ownership of their copyrights to Alaska Stock.[32] The assignment agreements all contain language equal or substantially similar to the following:

> The undersigned photographer, the sole owner of the copyrights in the undersigned's images ("the Images") . . . hereby grants to Alaska Stock all copyrights and complete legal title in the Images. Alaska Stock agrees to reassign all copyrights and complete legal title back to the undersigned immediately upon resolution of infringement claims brought by Alaska Stock relating to the Images.
>
> The undersigned agrees and fully transfers all right, title, and interest in any accrued or later accrued claims . . . brought to enforce copyrights in the Images, appointing and permitting Alaska Stock to prosecute said accrued or later accrued claims . . . as if it were the undersigned.
>
> Any proceeds obtained by settlement or judgment for said claims shall, after deducting all costs, expenses and attorney's fees, be divided and paid as per the photographer contract of 40% for the undersigned and 60% for Alaska Stock.[33]

By the end of July 2011, the images underlying Alaska Stock's claims were re-registered with the Copyright Office and new certificates of registration were issued, listing Alaska Stock as the registered copyright owner.[34]

On August 12, 2011, Alaska Stock filed its currently pending complaint against Pearson, alleging that Pearson committed copyright infringement by exceeding the scope of its licenses (or, in one case, using a photograph without a license) with respect to over 200 of its photographs.[35] Alaska Stock also asserts several counts of fraud, asserting that Pearson knew at

---

[32] Dkt. 99-4.

[33] *See id.*

[34] *See* Dkt. 99-5.

[35] Dkt. 1; Dkt. 1-1.

the time it requested various licenses that it would exceed the requested quantities.[36]  Prior to filing its summary judgment motion, Alaska Stock moved to voluntarily dismiss 70 of its copyright infringement claims, leaving 147 claims unresolved.[37]  Alaska Stock's motion for partial summary judgment seeks adjudication in its favor on 27 of those claims.[38]

In support of its motion for summary judgment, Alaska Stock has provided reports, disclosed by Pearson during discovery, indicating that, with respect to each of the 27 images, Pearson either printed in excess of its license or printed without a license.[39]  Pearson does not challenge the fact that it either exceeded the print quantity limitations of its licenses or printed without a license in the 27 instances.  Instead, Pearson argues:  (1) that the claims are barred by the statute of limitations; (2) that Alaska Stock lacks standing; (3) that the underlying images were not properly registered; (4) that Alaska Stock's allegations give rise to a breach of contract action, not a copyright infringement action; (5) that Pearson's overprinting was covered by the PVA; (6) that, with respect to one of the claims, Pearson had an implied license; and (7) that, with respect to 78 of Alaska Stock's claims, it is entitled to summary judgment because Alaska Stock has not supported the claims with evidence.[40]

---

[36]  Dkt. 1.

[37]  *See* Dkt. 90; Dkt. 165 (August 15, 2013 Order granting motion for voluntary dismissal).

[38]  *See* Dkt. 99 (seeking summary judgment with respect to image numbers 3, 4, 18, 19, 20, 26, 29, 30, 31, 33, 45, 47, 54, 56, 57, 59, 60, 62, 63, 64, 69, 83, 84, 98, 108, 147, 217).

[39]  *See* Dkts. 100 through 100-5.

[40]  *See* Dkt. 93; Dkt. 128.

# III.   LEGAL STANDARD

Summary judgment is warranted when the pleadings and the evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[41]  An issue is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case.[42]

Generally, it is the moving party that must demonstrate that it is entitled to summary judgment.[43]  The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.[44] Where the non-moving party has the burden at trial, however, the moving party is not required to produce evidence negating or disproving every essential element of the non-moving party's case.[45]  Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's claim.[46]  The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.[47]  The

---

[41]  Fed. R. Civ. P. 56(c).

[42]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[43]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

[44]  *Celotex*, 477 U.S. at 323.

[45]  *Id.*

[46]  *Id.*

[47]  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256.

non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.[48]

## IV.    DISCUSSION

**A.    Alaska Stock's Summary Judgment Motion**

Alaska Stock moves for partial summary judgment solely on the issue of liability on 27 of its copyright infringement claims.  Pearson opposes the motion, arguing that material questions of fact exist with respect to:  (1) whether the claims are time-barred; (2) whether Alaska Stock has standing to bring the claims; (3) whether the images underlying the claims have been properly registered; and (4) whether, with respect to the image for which Pearson did not have an express license, Pearson had an implied license.[49]

**1.    *Statute of Limitations***

Pearson argues, both in opposition to Alaska Stock's motion and in support of its own motion, that Alaska Stock's claims are barred by the statute of limitations.[50]

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of [the Act] unless it is commenced within three years after the claim accrued."[51]  A

---

[48]  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

[49]  Pearson raises two additional arguments in opposition to Alaska Stock's summary judgment motion—(1) that Alaska Stock's claims should have been brought under contract law, and (2) that summary judgment should be denied because Alaska Stock has failed to comply with Federal Rule of Civil Procedure 26.  *See* Dkt. 128.  Because of the manner in which the Court resolves Alaska Stock's summary judgment motion, the Court defers discussion of these additional arguments to its consideration of Pearson's summary judgment motion, in which Pearson makes identical arguments.

[50]  Dkt. 93; Dkt. 128.  The statute of limitations is an affirmative defense, even when raised in a summary judgment motion, and the burden of proof lies with the defendant who raises it.  *See Pacific Stock v. Pearson Educ., Inc.*, --- F. Supp. 2d ---, 2013 WL 704930, at *11 (D. Hawaii Apr. 30, 2013); *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1154 (C.D. Cal. 2001).

claim for copyright infringement "accrues when one has knowledge of a violation or is chargeable with such knowledge."[52] "[T]he statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement" and the plaintiff's "lack of knowledge was reasonable under the circumstances."[53] Put another way, "[a] claim for copyright infringement accrues on the date that a reasonable investigation would have put the rights holder on notice that potentially infringing conduct has occurred."[54]

Alaska Stock filed its complaint on August 12, 2011.[55] Accordingly, Alaska Stock's claims will be time-barred if it knew or should have known of Pearson's infringement before August 12, 2008. In support of its statute of limitations argument, Pearson asserts that Alaska Stock's claims accrued no later than May 2008, several months outside of the statute of limitations period.[56] Specifically, Pearson argues that Alaska Stock's suspicions in May 2008 that Pearson was over-printing with respect to a single image "trigger[ed] the accrual period on

---

[51] 17 U.S.C. § 507(b).

[52] *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

[53] *Polar Bear Prods., Inc. v. Timex Corp.*, 385 F.3d 700, 706 (9th Cir. 2004) (statute of limitations may bar copyright infringement claim where "plaintiff filed [his] copyright claim more than three years after [he] discovered or should have discovered infringement").

[54] *In re Napster, Inc. Copyright Lit.*, No. 00-cv-1369, 2005 WL 289977, at *4 (N.D. Cal. Feb. 3, 2005) (citing *Polar Bear Prods.,* 384 F.3d at 707) (a cause of action does not accrue until the plaintiff "learned or by reasonable diligence could have learned that he had a cause of action").

[55] *See* Dkt. 1.

[56] *See* Dkt. 128 at 8-10.

all of [Alaska Stock's] claims of alleged copyright infringement."[57] With limited exception, the Court disagrees.

The parties do not dispute that Pearson's May 2008 billing request was the first indication Alaska Stock had that something was amiss. Alaska Stock found the request "odd" because Pearson requested only 5,000 copies of the image and because Pearson referenced an earlier use of the photograph in a publication for which Alaska Stock had no record of having issued a license.[58] On May 13, 2008, Alaska Stock contacted Pearson to investigate, specifically asking for information regarding Pearson's prior use of the photograph.[59] After exchanging several emails, on July 8, 2008, Pearson informed Alaska Stock that it had printed over 350,000 copies of the image, even though it was licensed to print only 40,000 copies, and that the textbook edition in which the image appeared was not the edition for which Pearson had requested the license.[60] Because Alaska Stock reasonably learned of Pearson's overprinting of the image on July 8, 2008, Alaska Stock's copyright infringement claim with respect to that license also accrued on July 8, 2008. Because Alaska Stock did not file its Complaint until August 12, 2011, the Court agrees that the infringement claims related the July 8, 2008 disclosure are likely time-barred.

However, the parties have used an "all or nothing" approach in briefing the statute of limitations issue and did not identify for the Court the claim or claims linked to this particular

---

[57] *Id*. at 9.

[58] *Id.*

[59] *Id.*

[60] *See* Dkt. 118-6 at 18; Dkt. 118 at 7.

overuse by Pearson. From the record, it appears that the book title and ISBN number discussed in the parties' May 2008 through July 2008 email exchanges match the title and ISBN number associated with images 18 and 19 in Exhibit 1 to the complaint.[61] But the approximately 350,000 copies disclosed by Pearson in the email exchange do not match the quantity associated with those images in the documents submitted by Alaska Stock in support of its summary judgment motion.[62] Consequently, the Court is unable to conclude that the claims associated with images 18 and 19 are barred by the statute of limitations. This uncertainty precludes summary judgment on these two claims.

Apart from the two claims discussed above, the Court is not persuaded by Pearson's argument that Alaska Stock's copyright infringement claims accrued outside of the three-year limitations period. Despite Alaska Stock's frequent requests for Pearson's print run information related to other licenses, Pearson did not provide any such information until September 22, 2008, when it disclosed only two additional instances of overprinting.[63] The Court rejects Pearson's argument that the May 2008 billing request or single disclosure of overprinting, which Pearson described to Alaska Stock as a "project that fell through the cracks,"[64] served to put Alaska Stock on notice that Pearson exceeded the scope of its licenses in numerous other instances or provided Alaska Stock with a sufficient factual basis to bring its remaining copyright infringement and fraud claims.

---

[61] *Compare* Dkt. 118-6 at 18 *with* Dkt. 1-1 at 3.

[62] *See* Dkt. 118-6; Dkt. 100-1 at 6.

[63] *See* Dkt. 118-6 at 12.

[64] *Id*. at 16.

In sum, issues of fact preclude summary judgment in favor of Alaska Stock on the claims associated with images 18 and 19. With respect to the remaining 25 claims raised in Alaska Stock's motion, Pearson has not met its burden of proving that these claims are time-barred.[65]

### 2.    *Standing*

Pearson next argues that Alaska Stock does not have standing to assert its copyright infringement claims because it was assigned only "the bare right to sue" and was not granted actual ownership of the copyrights.[66]

The Copyright Act restricts the individuals and entities who are entitled to bring an action for infringement to those who qualify as "the legal or beneficial owner of an *exclusive right* under a copyright."[67] These "exclusive rights" are defined in 17 U.S.C. § 106 and include, for example, "the right to reproduce the copyrighted work, and to distribute copies of the work by selling, renting, leasing, or lending."[68] The "right to sue" is not an exclusive right under the

---

[65] Pearson alternatively asserts the doctrine of laches. A copyright holder is "vulnerable to the laches defense if he had knowledge of a planned infringement more than three years prior to filing his action, even if he complied with the statute of limitations by filing less than three years after the infringement actually began." *Kling v. Hallmark Cards, Inc.*, 25 F.3d 1030, 1036 (9th Cir. 2000). The Court rejects this argument for the same reasons it rejected the statute of limitations argument. Pearson has not shown that, prior to the start of the three-year statute of limitation period, Alaska Stock was aware of anything more than one instance of overprinting.

[66] Dkt. 128 at 18-21.

[67] *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) (quoting 17 U.S.C. § 501(b)) (emphasis added); *Silvers v. Sony Pictures Entert., Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (en banc) ("[t]o be entitled to sue for copyright infringement, the plaintiff must be the legal or beneficial owner of an exclusive right under a copyright") (citation and internal quotations omitted).

[68] *Righthaven*, 716 F.3d at 1169 (citing 17 U.S.C. § 106).

Copyright Act.[69]  Yet the right to sue, even for past infringement, may be transferred to another party if ownership of an exclusive right is also transferred.[70]

In determining whether an agreement has transferred an exclusive right, in addition to the right to sue, courts "look not just at the labels parties use but also at the substance and effect of the contract."[71]  If the "substance and effect of the contract" demonstrate that a plaintiff has only "the bare right to sue," the plaintiff lacks standing.[72]  In analyzing a particular contract, courts look at what was actually assigned and the extent to which the right to exploit exclusive rights under the Copyright Act was expressly limited.[73]

Ninth Circuit authority directly relevant to Pearson's standing argument is limited.  In *Silvers v. Sony Pictures Entertainment*, the Ninth Circuit established that "[t]he bare assignment of an accrued cause of action is impermissible" under the Copyright Act.[74]  *Silvers* involved an assignment in which the copyright owner expressly retained all ownership and exclusive rights, and assigned to the plaintiff only the "right, title and interest in and to any claims and causes of action against [the defendant]."[75]

---

[69]  *Righthaven*, 716 F.3d at 1169.

[70]  *Silvers*, 402 F.3d at 890 n.1; *see also* 17 U.S.C. § 201(d)(1) ("The ownership of a copyright may be transferred in whole or in part . . . ."); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1145-46 (9th Cir. 2008) ("ownership of a copyright may be transferred in whole or in part by any means of conveyance").

[71]  *Righthaven*, 716 F.3d at 1169-70.

[72]  *Id.*

[73]  *See id.* at 1170-72.

[74]  402 F.3d at 890.

[75]  *Id.* at 883.

Following *Silvers*, in *Nafal v. Carter*, the Ninth Circuit affirmed the decision of a district court in a case involving a less straightforward assignment.[76] The district court in *Nafal* had examined a contract purporting to assign "an undivided one-half (50%) interest" in an exclusive license pertaining to a copyrighted song.[77] The written agreement, however, expressly prohibited the plaintiff from exercising decision-making authority, severely limited his ability to exploit exclusive rights, required him to file the pending lawsuit but prohibited him from filing any other lawsuit, and left the him "utterly impotent to decide how and when to enforce the [l]icense [a]greement against infringers."[78] Under those circumstances, the district court found that, despite "the label that the parties put on the agreement," the "substance of what was given to the [plaintiff]" in the assignment was nothing more than the bare right to sue.[79]

More recently, in *Righthaven LLC v. Hoehn*, the Ninth Circuit considered an assignment agreement that purported to transfer both the right to sue and various exclusive rights, but was limited by a pre-existing contract.[80] The language of the assignment agreement in *Righthaven* provided, in part, that "subject to [the assignor's] rights of reversion," Righthaven was granted "all copyrights requisite to have Righthaven recognized as the copyright owner of the [relevant

---

[76]  388 F. App'x 721 (9th Cir. 2010) (unpublished).

[77]  540 F. Supp. 2d 1128 (C.D. Cal. 2007), *aff'd*, *Nafal v. Carter*,  388 F. App'x 721.

[78] *Nafal*, 540 F. Supp. 2d at 1142.

[79]  *Id*. at 1141-44 ("Essentially, [the p]laintiff [wa]s no more than the individual designated by [the assignor] to enforce the [l]icense [a]greement at [the assignor's] whim.").

[80]  *Righthaven*, 716 F.3d 1166.

work] for purposes of Righthaven being able to claim ownership as well as the right to seek redress for past, present, and future infringements of the copyright."[81]

Prior to executing the assignment, however, Righthaven entered into a separate contract with the assignor, which placed "limits on what Righthaven could do with any copyright assigned to it."[82] This earlier contract provided, for example, that the assignor retained the "unfettered and exclusive ability" to exploit any copyright assigned to Righthaven and that Righthaven had "no right or license" to exploit the work or participate in any royalties associated with exploitation of the work.[83] The Ninth Circuit concluded that, "[w]ithout any of those rights," the later assignment agreement effectively "left [Righthaven ] with the bare right to sue, which [was] insufficient for standing under the Copyright Act."[84] Importantly, it was not the language of Righthaven's assignment agreement, but rather the limits placed on the assignment by the earlier contract, that led the Ninth Circuit to conclude that Righthaven did not possess any exclusive rights under the Copyright Act.[85]

Here, Pearson asserts that questions of fact exist regarding Alaska Stock's standing to bring this action. The Court disagrees. Unlike the agreements at issue in *Nafal* or *Righthaven*, the "substance and effect" of the written assignments in this case reflect a true, albeit temporary,

---

[81] *Id*. at 1170.

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

transfer of ownership interest.[86] Indeed, even the copyright certificates themselves list Alaska

Stock as the registered owner.[87] Although Pearson points to evidence that the assignments were

made for the purpose of facilitating litigation, including the fact that Alaska Stock has agreed to

reassign ownership upon completion of the litigation, the photographers' reasons for assigning

ownership does not make the transfer of ownership any less effective. Property rights are

transferred every day for any number of reasons and for varying periods of time; copyrights are

no different.[88] The Ninth Circuit has never suggested that the *reason* an assignment is made—

even if that reason is simply to facilitate litigation—or an assignment's temporary nature will

transform an otherwise effective assignment of ownership into an assignment of the bare right to

sue.[89] Rather, the problem arises where the assignor labels an assignment a transfer of

---

[86] *See* Dkt. 99-4.

[87] *See* Dkt. 99-5.

[88] *See, e.g., Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) (likening copyrights to "any other property right" and discussing the means by which copyrights may be transferred).

[89] At least two district courts have now considered the issue of standing in contexts similar to this case and have reached conflicting decisions. *Compare Mindon Pictures, Inc. v. Pearson Educ., Inc.*, ---F. Supp. 2d---, 2013 WL 812412, at *2-8 (N.D. Cal. Mar. 5, 2013) (finding no standing) *with Pacific Stock, Inc. v. Pearson Educ., Inc.*, ---F. Supp. 2d---, 2013 WL 704930, at *5, 16-17 (D. Hawaii Apr. 30, 2013) (concluding that an assignment substantially similar to Alaska Stock's was sufficient to confer standing). Pearson submitted *Mindon Pictures* as supplemental authority in support of its motion. *See* Dkt. 158. However, *Mindon* is distinguishable. *See* 2013 WL 812412, at *2-8 (basing its standing decision, in part, on the fact that the plaintiff had engaged in a scheme to back-date assignments so that they would pre-date the filing of the complaint and had admitted that the only purpose for which it could use the assignment was to bring the lawsuit). Moreover, to the extent the *Mindon* court relied on *Silvers*, *Righthaven*, or *Nafal* to find lack of standing on facts similar to those here (which it did), this Court cannot agree. There is nothing in these appellate decisions to suggest that a copyright owner's *reason* for transferring ownership, or the fact that rights are transferred for a limited period of time, negates an otherwise effective assignment.

ownership, but expressly reserves the exclusive rights in the copyright to itself.  Those are not the facts presented here.

In sum, the Court is not convinced that Alaska Stock lacks standing to bring this action.

### 3.        *Copyright Registration*

Pearson also challenges the validity of Alaska Stock's copyright registrations. Specifically, Pearson argues that Alaska Stock has failed to provide copies of the deposits (the actual photographs) on file with the Copyright Office and has therefore failed to establish that it owns copyrights to those images.

A registered copyright is generally a precondition to a copyright infringement claim.[90] Because ownership of a valid copyright is a prerequisite to filing an infringement action, the plaintiff bears the burden of proof.[91]  Under 17 U.S.C. § 401(c), a certificate of registration made within five years after first publication of the work constitutes *prima facie* evidence of the validity of the copyright and entitles the holder to a "rebuttable presumption" of validity.[92]  A presumption of validity "shifts to the defendant the burden to prove the invalidity of the plaintiff's copyright."[93]  Where the burden has shifted, the "defendant must [] offer some

---

[90]  17 U.S.C. § 411.

[91]  *Fleischer Studios, Inc.v. A.V.E.L.A., Inc.*, 654 F.3d 958, 962 (9th Cir. 2011) (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir.1984)).

[92]  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).

[93]  *Id*. (citing *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 669 (3rd Cir. 1990); *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993)).

evidence or proof to dispute or deny the plaintiff's *prima facie* case of infringement."[94]

However, absent a certificate of registration within the five-year timeframe, there exists no

presumption of validity, and the "evidentiary weight to be accorded the certificate . . . shall be

within the discretion of the court."[95]

Here, Alaska Stock submitted certificates of registration for each of the images with

respect to which it seeks summary judgment.[96]  The certificates indicate that the images

pertaining to 26 of the claims were first published more than five years ago.[97]  Accordingly, the

certificates of registration relating to these 26 claims are not entitled to a presumption of validity

and Alaska Stock retains the burden of proving that the underlying images are in fact the images

for which the certificates of registration were issued.

The certificates themselves do not include a meaningful description of the images to

which they apply.  Each certificate merely provides a series of numbers and letters as the "Title

of Work," and lists "photograph(s)" as the work created by the author.[98]  In addition to the

certificates, Alaska Stock has submitted the declaration of its president, stating that "[e]ach of the

Photographs is the subject of a valid Certificate of Registration issued by the Register of

Copyrights."[99]

---

[94]  *Entm't Research Grp.*, 122 F.3d at 1217 (citing *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992)).

[95]  17 U.S.C. § 410(c).

[96]  *See* Dkt. 99-5.

[97]  *See id.*

[98]  *See id.*

[99]  Dkt. 99-3.

In response to Pearson's challenge, Alaska Stock cites the general rule governing summary judgment motions, asserting that Pearson has not "come forward with *specific facts* showing that there is a genuine issue for trial" and cannot prevent summary judgment merely by stating that Alaska Stock has not presented evidence of the deposits.[100] While this typically is the standard, ownership of a valid copyright is pre-condition to bringing a copyright infringement action and, in the absence of the presumption of validity, Alaska Stock retains the burden of proving that the images which are the subject of its claims are the images registered with the Copyright Office.[101]

There is little law directly on point, and the briefing provides little guidance. Pearson cites two cases; Alaska Stock cites none.

In *Corbis Corp. v. Amazon.com, Inc.*, the Western District of Washington considered a substantially similar argument, in which the defendant asserted that it was entitled to summary judgment because the plaintiff, by not showing that a particular photograph was covered by the certificates of registration in the record, failed to prove that the photograph had been registered by the Copyright Office.[102] Although the plaintiff submitted the relevant copyright certificates, the Court explained that the certificates were only *prima facie* evidence of "the facts stated in the certificate."[103] The court observed that there was nothing on the face of the certificates to

---

[100] Dkt. 150 at 19 (citing Fed. R. Civ. P. 56(c)).

[101] *See, e.g., Entm't Research Grp., Inc.*, 122 F.3d at 1217.

[102] 351 F. Supp. 2d 1090, 1114-15 (W.D. Wash. 2004).

[103] *Corbis Corp.*, 351 F. Supp. 2d at 1114 (quoting *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1321 (9th Cir. 1986)).

confirm that the particular photograph had been included in the deposited images.[104]  It found

that "[t]he only way to determine with any certainty whether [the registration certificate] covered

the [photo] [wa]s to review the deposits included with the registration applications."[105]  Without

the deposits, the court concluded that the plaintiff "c[ould] not show that the [photo] [wa]s

among the photographs covered by [the] [r]egistration[s]."[106]  On this basis, the court found that

"a legitimate question of fact" remained "regarding whether the [photo] [wa]s protected" by the

submitted copyright certificates such that neither party was entitled to summary judgment.[107]

     In *Lanard Toys Ltd. v. Novelty, Inc.*, the Central District of California considered this

issue in the context of a motion for preliminary injunction.[108]  In assessing whether the plaintiff

was likely to succeed on the merits, the court examined whether the plaintiff had established

ownership in the allegedly infringed works.[109]  Specifically, the court considered the defendant's

argument "that although [the] plaintiffs ha[d] produced copies of various copyright

registrations," they had "not proffered any certified copies of the deposit materials from the

Copyright Office showing exactly what [wa]s covered by each of the copyright registrations."[110]

The defendants asserted that without such evidence, "it [wa]s impossible for the [d]efendants (or

---

[104]  *Id.* at 1114-15.

[105]  *Id.*

[106]  *Id.* at 1115.

[107]  *Id.*

[108]  No. 05-cv-8406-CAS, 2007 WL 2439505, at *6-7 (C.D. Cal. Mar. 17, 2006).

[109]  *Id.*

[110]  *Id.*

the [c]ourt) to compare whatever works that may have been registered to the allegedly infringing products."[111]  The district court agreed, finding that the certificates of registration, even when combined with the declaration of the plaintiff, were insufficient evidence of ownership and denied the plaintiff's motion for preliminary injunction.[112]

Like the certificates in *Corbis* and *Lanard Toys*, the certificates of registration in this case do not provide the details necessary to confirm that the image or images relating to Alaska Stock's claims are the same images underlying the certificates of registration.  Under these circumstances, the Court concludes that a genuine issue of material fact exists such that summary judgment in favor of Alaska Stock is inappropriate with respect to the 26 claims not covered by the presumption of validity.[113]

This leaves Alaska Stock's 27th claim, which corresponds to image 217.  Because this image was registered within five years of its first publication, it is Pearson's burden to present evidence to "rebut" the presumption that the photographs were validly registered.  Pearson has

---

[111]  *Id.*

[112]  *Id.* at *7.

[113]  Alaska Stock argues, in the alternative, that its original copyright registrations (as opposed to the re-registrations discussed above) are sufficient to establish standing.  Dkt. 150 at 20.  The images at issue in this case were previously registered as part of photographic compilations, in which many different photographs by many different authors were registered under a single copyright.  *See, e.g.,* Dkt. 99-5 at 3.  On September 10, 2010, another judge in this District determined in *Alaska Stock v. Houghton Mifflin Harcourt Publ'g Co.* that such compilation registrations did not comply with the Copyright Act's requirements and were therefore invalid. *See* 3:09-cv-61-HRH, 2012 WL 3785720, at *2-3 (D. Alaska Sept. 10, 2010).  The September 2010 Order is currently on appeal in *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub'g Co.*, No. 10-36010 (9th Cir.).  The Court has considered Alaska Stock's arguments, including its supplemental authority, but defers to this District's September 2010 decision concluding that the compilation registrations were invalid.

provided no such evidence.  Accordingly, Pearson has not established a material issue of fact with respect to Pearson's ownership of a valid copyright in image 217.

### 4. *Implied License*

In most of its claims, Alaska Stock alleges that Pearson used photographs beyond the scope of express licenses.  But, in its claim pertaining to image 217, Alaska Stock alleges that Pearson engaged in copyright infringement by printing the image with no license at all.[114] Pearson does not dispute that it printed numerous copies of image 217 without an express license.[115]  However, Pearson argues that Alaska Stock is precluded from summary judgment on this claim because there is evidence that Pearson was impliedly licensed to use the image.[116] Hesitantly, the Court agrees.

Although "transfers of copyright ownership must be in writing, "[a] nonexclusive license may be granted orally, or may even be implied from conduct."[117]  The "implied grant of a nonexclusive license to use a copyrighted work precludes a copyright infringement claim."[118] Often, the parties' course of dealings will determine whether an implied license was given.[119]

---

[114] *See* Dkt. 100-1 at 7.

[115] *See* Dkt. 100-1 at 7; Dkt. 128 at 14-16.

[116] Dkt. 128 at 14-16.

[117] *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990) (quoting *Nimmer on Copyright* § 10.03[A], at 10-36).

[118] *Falcon Enters., Inc. v. Publishers Svc., Inc.*, 428 F. App'x 579, 581 (9th Cir. June 15, 2011) (unpublished) (citing *Effects*, 908 F.2d at 559).

[119] *See, e.g., Falcon Enters.*, 438 F. App'x at 581 (parties' history of "frequent and informal interactions" sufficient to establish implied license); *Psihoyos v. Pearson Education*, 855 F. Supp. 2d 103, 127-29 (S.D.N.Y. 2012) (among other things, evidence that "Pearson did at times

In similar litigation against Pearson, other courts have reached differing conclusions on substantially the same argument. In *Psihoyos Education v. Pearson*, the Southern District of New York found that material issues of fact precluded summary judgment on the issue of an implied license, in part, because the parties' prior dealings suggested that, with the plaintiff's knowledge, Pearson sometimes published images before finalizing permission.[120] But the court explained that "the question comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue" and indicated that "both parties to the transaction, not just the defendant" must have "intended that the defendant could use or copy the plaintiff's work without liability for copyright infringement."[121] More recently, the District of Hawaii and the District of Arizona rejected Pearson's implied license arguments, finding no evidence in the parties' course of dealings to support the defense.[122] Ultimately, whether Pearson can prevent summary judgment on this basis comes down to whether Pearson has provided evidence from which a reasonable juror could find that that an implied license existed.

Pearson supports its position, in part, by pointing to evidence that over a 12-year business relationship, Alaska Stock "never denied a request by Pearson for a license" and seemed to have

---

publish images before finalizing permission" was sufficient to create material issue of fact precluding summary judgment).

[120] *See Psihoyos*, 855 F. Supp. 2d at 129.

[121] *Id.* at 124 (citing *Viacom Int'l Inc. v. Fanzine Int'l Inc.*, No. 98-cv-7448, 2000 WL 1854903, at *3 (S.D.N.Y. July 12, 2000) ("As with all copyright licenses, an implied license protects the licensee only to the extent the copyright owners intended that their copyrighted works be used in the manner in which they were eventually used.").

[122] *See Pacific Stock*, 2013 WL 704930, at *11; *Bean v. Pearson Educ., Inc.*, ---F. Supp. 2d---, 2013 WL 2564106, at *2-3 (D. Ariz. 2013).

a "policy of [] granting Pearson whatever rights it requested."[123]  The Court is not persuaded by this argument.  As the District of Hawaii recently explained, the fact that there is no evidence that Alaska Stock ever refused a request by Pearson to use its photographs, "does not mean that [Alaska] Stock was barred from refusing a request" or that "Pearson was free to use the images in any way it wanted, without even requesting permission."[124]

Nevertheless, the Court finds that there exists at least some evidence to create a triable issue of fact with respect to whether Pearson had an implied license.  For example, the following exchange took place at the deposition of Alaska Stock's president, Jeffrey Schultz:

Q:      [After you became aware of Pearson's overprinting,] you [] continued
        asking for new licenses for new images so that [Pearson would] continue
        to use your images, correct?
A:      Yes.
Q:      And you [asked to be part of] their in-house image system so that []
        Pearson's researchers [could] use [the images] as they need[ed] to?
A:      Right.
Q:      Use Alaska Stock's images as they want[ed]?  Yes?
A:      Yes.
Q:      And then send a [purchase order]?
A:      Yes.
                    ***
Q:      When they're used?
A:      Correct?
Q:      *After they're used*?
A:      *Correct.*[125]

Aside from this deposition excerpt, none of the evidence to which Pearson points suggests that Pearson was free to use a photograph for which it had no license, or to postpone requesting a

---

[123]  Dkt. 128 at 15.

[124]  *Pacific Stock,* 2013 WL 704930, at *11.

[125]  Dkt. 148-3 at 5-6.

license for more than six months after publishing an image.[126]  Although the Court has doubts about whether Pearson will be able to persuade a jury that the parties' course of conduct created an implied license with respect to image 217, there is evidence to create a material issue of fact for trial.  Consequently, Alaska Stock's motion for summary judgment on the claim associated with image 217 is also denied.

## B.      Defendant's Summary Judgment Motion

Pearson moves for summary judgment on Alaska Stock's claims in their entirety.[127]  Pearson asserts that it is entitled to judgment in its favor because:  (1) Alaska Stock's claims are barred by the statute of limitations; (2) Alaska Stock's allegations give rise to claims for breach of contract rather than copyright infringement; (3) Alaska Stock failed to timely disclose its damages calculations pursuant to Rule 26; and (4) Alaska Stock has not submitted evidence to support its fraud claims.[128]  Pearson also moves for summary judgment, with respect to 78 specific infringement claims, because Alaska Stock has no evidence to support the claims.[129]

For the reasons explained previously, Pearson's motion for summary judgment based on its statute of limitations defense is denied.  For the reasons discussed below, the Court finds that Pearson is entitled to summary judgment on the 78 claims for which Alaska Stock has submitted no evidence, but rejects Pearson's other arguments.

---

[126]  *See* Dkt. 100-1 at 7 (although the publication in which image 217 appeared was circulated in 2010, Pearson did not request permission to use the image until June 3, 2011).

[127]  Dkt. 92.

[128]  *See* Dkt. 93.

[129]  *See id.*

1.    ***Breach of Contract vs. Copyright Infringement***

Pearson asserts that it is entitled to summary judgment on Alaska Stock's copyright infringement claims because any violation of the terms of its licenses amounted to a breach of covenants, which gives rise only to a breach of contract action.[130]  As a preliminary matter, the Court notes that the District of Hawaii recently rejected this argument in a substantially similar case against Pearson.[131]  Based on that decision, Pearson apparently withdrew this same argument from consideration in a similar copyright action pending in Arizona.[132]  The Court briefly explains why it agrees with the District of Hawaii's decision.

 "To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license[,] and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)."[133]  The contractual terms in a license that limit the license's scope are referred to as "conditions," the breach of which constitutes copyright infringement.[134]  All other license

---

[130]  Dkt. 93 at 13-16.

[131]  *See  Pacific Stock*, 2013 WL 704930, at *8.

[132]  *See Bean*, 2013 WL 2564106, at *2 n.2.

[133]  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010), *as amended*; *see also Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121-22 (9th Cir. 1999) ("Generally, a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement and can sue only for breach of contract[;] however, [if] a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement") (citation omitted); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087-88 (9th Cir. 1989) ("A licensee infringes on the owner's copyright if its use exceeds the scope of its license.").

[134]  *MDY Industries*, 629 F.3d at 939.

terms are referred to as "covenants," the breach of which is actionable only under contract law.[135]

In *MDY Industries v. Blizzard Entertainment*, the Ninth Circuit discussed the difference between liability for copyright infringement (the breach of a condition) and liability for breach of contract (the breach of a covenant), providing the following example:

> [C]onsider a license in which the copyright owner grants a person the right to make one and only one copy of a book with the caveat that the licensee may not read the last ten pages. Obviously, a licensee who made a hundred copies of the book would be liable for copyright infringement because the copying would violate the Copyright Act's prohibition on reproduction and would exceed the scope of the license. Alternatively, if the licensee made a single copy of the book, but read the last ten pages, the only cause of action would be for breach of contract, because reading a book does not violate any right protected by copyright law.[136]

Alaska Stock's claims that Pearson exceeded the scope of its various licenses with respect to the number of publications in which an image could appear is no different from the Ninth Circuit's example of the person who made a hundred copies of a book while licensed to make only one.

As the District of Hawaii recently concluded in *Pacific Stock*, because Alaska Stock's claims "go to exceeding the scope of an exclusive right of copyright granted in various licenses, as opposed to a covenant contained in those licenses," Alaska Stock can maintain its copyright infringement claims against Pearson.[137]

---

[135] *Id.*

[136] *Id.* (quoting *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1316 (Fed. Cir. 2005)).

[137] *Pacific Stock,* 2013 WL 704930, at * 8.

Accordingly, Pearson's request for summary judgment on this basis is denied.[138]

## 2. *Rule 26 Disclosures*

Pearson separately asserts that it is entitled to summary judgment because Alaska Stock failed to provide supplemental information regarding its damages calculations as required by Federal Rule of Civil Procedure 26.[139]

Rule 26(a)(1)(A)(iii) requires parties to make initial disclosures, including their computation of damages. Rule 37(c)(1) provides that if a party fails to provide disclosures under Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

In its October 2011 initial disclosures, Alaska Stock provided the following information regarding damages:

1. Alaska Stock seeks damages pursuant to 17 U.S.C. 504(b) as set forth in the Complaint, for actual licensing fees it is owed as a result of Defendants' authorized, infringing uses of the Images.
2. Alaska Stock seeks all revenues from Defendants' unauthorized, infringing uses of the Images pursuant to 17 U.S.C. 504(b), except to the extent that Defendants can prove elements of profit attributable to factors other than Defendants' unauthorized, infringing uses of the Images . . . .

---

[138] In the same section of its brief as it makes its covenant argument, Pearson alternatively argues that the parties' preferred vender agreement authorized Pearson to print in excess of its licenses. *See* Dkt. 93 at 19-20. Although Pearson makes a number of creative arguments to support this assertion, there is nothing in the plain language of the PVA to suggest that it establishes anything more than pricing terms. *See* Dkt. 95-5. As the District of Hawaii recently explained in rejecting Pearson's identical argument, "[n]othing in the agreement[] allowed Pearson to unilaterally enhance its usage without notification to Pacific Stock and without payment; certainly nothing in the agreement[] rendered inapplicable copyright infringement laws requiring compliance with the scope of a limited license when a licensee has not [] sought a license enhancement." *Pacific Stock*, 2013 WL 704930, at *11. Like the District of Hawaii, this Court is unconvinced by Pearson's arguments. At a minimum, questions of fact exist which preclude summary judgment.

[139] Dkt. 93 at 17-19.

3. Where applicable, and at Alaska Stock's election, Alaska Stock seeks statutory damages pursuant to 17 U.S.C. 504(c).

    \*        \*        \*

8. Said damages and interest will be calculated following the disclosure of relevant facts presently known only to Defendants.[140]

In response to Pearson's motion, Alaska Stock asserts that it could not calculate its actual damages or provide revenue numbers until Pearson disclosed its print run information and the revenue it received for the books in which Alaska Stock's images were printed.[141] Alaska Stock also asserts that this information was not fully disclosed until August 21, 2012.[142] Alaska Stock, in turn, supplemented its initial disclosures with its damages calculation information on November 16, 2012.[143] Although Alaska Stock acknowledges that its disclosures were tardy, it argues that Pearson suffered no harm because it was already in possession of the information necessary to calculate the various damages Alaska Stock referred to in its initial disclosures.[144]

According to Pearson, because Alaska Stock was late in providing damages calculations, Pearson is entitled to summary judgment on all of Alaska Stock's claims.[145] The Court disagrees and notes that the circumstances here are distinguishable from the cases Pearson cites in support of its argument. For example, unlike the plaintiff in *Hoffman v. Impact Confections, Inc.*, there is no evidence here that Pearson, after disclosing the information which Alaska Stock needed to

---

[140] Dkt. 95-10 at 4-5.

[141] Dkt. 117 at 19.

[142] *See id.*

[143] *See* Dkt. 147.

[144] Dkt. 18-20.

[145] Dkt. 93 at 17-19.

calculate its damages, ever contacted Alaska Stock to remind it of its obligation to produce the calculations.[146] Instead, Pearson elected to raise the issue for the first time in its summary judgment motion.

This case is also unlike *Use Techno Corp. v. Kenko USA, Inc.*, in which the plaintiff alleged numerous instances of false advertising and sought damages relating to the defendant's profits.[147] When the plaintiff failed to provide its damages calculations, the defendant sought summary judgment, making the same argument Pearson makes here.[148] Like Alaska Stock, the plaintiff argued that the untimely disclosure was harmless because the defendant already had the information regarding its own profits.[149] The court rejected this argument, however, because the plaintiff had never identified the advertisements (out of thousands) that were allegedly false, making it impossible for the defendant to determine which subset of profits applied to the plaintiff's damages claim.[150]

Here, Pearson was not only already in possession of information regarding its profits and revenue, but could also independently identify the publications in which it had printed Alaska

---

[146] *See* 544 F. Supp. 2d 1121, 1128 (S.D. Cal. 2008) (granting summary judgment on the issue of damages, in part, because the plaintiff failed to disclose the information despite the defendant's multiple requests for it).

[147] No. 06-cv-2754-EDL, 2007 WL 4169478, at *1-3 (N.D. Cal. 2007).

[148] *Id.* at *3.

[149] *Id.*

[150] *Id.*

Stock's images beyond the limits of its licenses.[151]  The basis for the other damages identified in Alaska Stock's initial disclosures were similarly no mystery to Pearson—it easily could have estimated damages based on what it would have been charged under the parties' PVA, and could have reviewed 17 U.S.C. § 504(c) to determine potential statutory damages.

The Court agrees with Pearson that Alaska Stock was obligated to provide its damages information sooner than it did.  However, the Court concludes that Alaska Stock's delay in disclosing the information was harmless.  Pearson does not identify any specific surprise or prejudice it suffered as a result of the tardy disclosure, and it does not assert that Alaska Stock's failure to produce the information in a timely manner was the product of willfulness or bad faith.[152]  Moreover, at this point, a trial date has not yet been set and Pearson has been in possession of the relevant information for more than nine months.[153]  Under these circumstances, any violation of Rule 26(a) does not provide a basis for granting summary judgment.

### 3.    *Fraud Claims*

Pearson seeks summary judgment on Alaska Stock's fraud claims on the basis that Alaska Stock "has not proffered any evidence of fraud."[154]  To prevail on a fraud claim in

---

[151]  After Alaska Stock provided this information, the burden would have been on Pearson to prove any expenses that should be deducted from gross revenues and what portion of the remaining profits were not attributable to Alaska Stock's images.  *See* 17 U.S.C. 504(b).

[152]  *See Bean*, 2013 WL 2564106, at *10 (rejecting Pearson's similar argument) (citing *NW Pipe Co. v. DeWolff, Boberg and Associates, Inc.*, No. 10-cv-840-GHK, 2012 WL 137585, at *2 (C.D. Cal. January 17, 2012) ("Courts are more likely to exclude damages evidence when the belated disclosure would require a new briefing schedule and the reopening [of] discovery.")).

[153]  *See id.*

[154]  Dkt. 93 at 23.

Alaska, a plaintiff must show: "(1) a false representation of fact; (2) knowledge of the falsity of the representation; (3) intention to induce reliance; (4) justifiable reliance; and (5) damages."[155]

Alaska Stock's fraud claims correspond to Pearson's overuse of Alaska Stock's photographs in three of Pearson's textbooks.[156]  Alaska Stock asserts that, at the time Pearson requested to use the photographs in the books, it knew that its actual uses would exceed the quantities for which it requested licenses.[157]  In opposition to Pearson's summary judgment motion, Alaska Stock submits information and records produced by Pearson to demonstrate that, in each of the three books, Pearson exceeded the limits of its licenses.[158]

As circumstantial evidence of Pearson's knowledge and intent, Alaska Stock points to Pearson's pre-publication print run forecast for one of the textbooks which shows that Pearson forecasted a greater number of books than the number of uses for which it requested licenses.[159] Alaska Stock also provides Pearson's circulation history for prior editions of the textbook, which show that earlier editions of the book were circulated in numbers greater than the number of uses for which Pearson requested licenses.[160]  From this circumstantial evidence, a reasonable jury could find that Pearson requested licenses for a certain number of uses knowing that it would

---

[155]  *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010) (citation omitted).

[156]  *See* Dkt. 1 at 4; Dkt. 117 at 23.

[157]  Dkt. 1 at 4.

[158]  Dkts. 119 at 3-4; 119-2; 119-3; 119-4; 119-5; 119-6; 119-7; 122; *see also* Dkt. 100-1.

[159]  *See* Dkt. 119 at 2; Dkt. 120.  Although Alaska Stock requested pre-publication forecasts on each of the publications, Pearson states that, due to the passage of time, the other forecasts are unavailable.  *See* Dkt. 147.

[160]  *See* Dkt. 119 at 2; Dkt. 121.

print more copies than the licenses authorized.[161]  The Court therefore concludes that Alaska

Stock has presented sufficient evidence to create triable issues of fact on the fraud claims.[162]

Accordingly, Pearson's motion for summary judgment on these claims is denied.

### 4. *Other Copyright Infringement Claims*

Finally, Pearson seeks summary judgment on 78 of Alaska Stock's copyright

infringement claims because Alaska Stock has presented no evidence to support them.[163]  Alaska

Stock concedes that "Pearson's records demonstrate it did not exceed the print quantity

limitations [in these] 78 instances."[164]  It asks the Court to limit entry of judgment to the "print

quantity" aspect of the claims and to "exclud[e] [aspects of the claims related to] other license

limits, such as geography territory or type of media."[165]  However, Alaska Stock points to no

evidence to support these claims under any theory.  Accordingly, the Court grants summary

judgment in favor of Pearson on the claims corresponding to lines 105-107, 109-146, 149-157,

---

[161]  *See Friedman v. Quest International Fragrances Co.*, F. App'x 359, 359-60 (9th Cir. 2003) ("It is settled law in this Circuit that circumstantial evidence is sufficient to withstand summary judgment, especially in cases where direct proof of wrongdoing is difficult to obtain."); *see also In re Software Toolworks Inc.*, 50 F.3d 615, 627 (9th Cir. 1994) ("proof of scienter in fraud cases is often a matter of inference from circumstantial evidence"); *Gabaig v. Gabaig*, 717 P.2d 835, 838 (Alaska 1986) ("[e]xistence of a fraudulent intent is a question of fact, often proven by circumstantial evidence").

[162]  The Court also notes that at least two other district courts have recently denied summary judgment motions by Pearson on substantially similar facts and arguments.  *See Bean*, 2013 WL 2564106, at *8-9; *Pacific Stock*, 2013 WL 704930, at *13-14.

[163]  Dkt. 93 at 2, 9-10; Dkt. 147.  Pearson identifies the claims as "lines 105-[1]07, 109-146, 149-157, 160-162, 166, 172-179, 183-84, 188-189, 194-197, 200-202, and 204-208 of Exhibit 1 of the Complaint."  *See* Dkt. 1-1.

[164]  Dkt. 117 at 27.

[165]  *Id.*

34

160-162, 166, 172-179, 183-184, 188-189, 194-197, 200-202, and 204-208 of Exhibit 1 to the complaint.

## V.    CONCLUSION

For the foregoing reasons, Alaska Stock's summary judgment motion at Docket 99 is DENIED, and Pearson's summary judgment motion at Docket 92 is GRANTED, in part, and DENIED, in part.

Dated at Anchorage, Alaska this 10th day of September, 2013.


/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE